**Neil JOHNSON, Petitioner**

v.

**UNITED STATES of America, Respondent**

**No. 3:93–CR–240 (EBB), 3:98–CV–479 (EBB).**

United States District Court, D. Connecticut.

Nov. 25, 2003.

382

Neil Johnson, Otisville, NY, Pro se.

*RULING ON PETITIONER'S MOTION
UNDER 28 U.S.C. Section 2255*

BURNS, Senior District Judge.

### INTRODUCTION

Neil Johnson, (hereinafter "Johnson" or "Petitioner") has filed a Motion to Vacate, Set Aside or Correct His Conviction, pursuant to 28 U.S.C. § 2255, challenging his conviction and sentencing for conspiring to possess with intent to distribute narcotics. After a thorough review of the parties' moving papers and exhibits thereto, it was determined that a hearing was unnecessary in order to decide the present Motion which is now ready for decision.

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are distilled from the parties' moving papers, the joint and government appendices before the Second Circuit, the pre-sentence report, the transcript of his sentencing, and the transcript of his state court guilty plea. The petitioner, Neil Johnson, was arrested on November 24, 1993, on a complaint

charging him with violating 21 U.S.C. §§ 841(a)(1) and 846. On or about December 21, 1993, an indictment was returned, charging that the petitioner had conspired with one Raul Rivera to possess with intent to distribute a controlled substance, in violation of §§ 841(a)(1) and 846. The petitioner pleaded not guilty on January 5, 1994, and petitioner's trial commenced on March 21, 1994, before the Honorable Peter C. Dorsey. On March 28, 1994, a jury returned a verdict of guilty on both counts. The petitioner was sentenced to 320 months imprisonment, a $24,000 dollar fine, and eight years of supervised release upon completion of his sentence. Johnson appealed his conviction, and the Second Circuit Court of Appeals reversed and remanded for a new trial. *United States v. Rivera*, 61 F.3d 131 (2d Cir.1995)

On September 14, 1995, jury selection for the second trial began before Judge Dorsey. The case was then transferred to this court, which continued to conduct voir dire and complete the jury selection. The second trial began before this court on September 26, 1995, and continued until October 5, 1995.

The evidence produced at trial resulted from a heroin trafficking investigation of the defendant, initiated by the Drug Enforcement Administration ("DEA") in Hartford, Connecticut. One of the government's chief witnesses was Raul Rivera, who, after being arrested for possession of narcotics, agreed to cooperate with the government against Johnson. At the trial, Rivera testified about Johnson's narcotics operation, which included smuggling heroin from Mexico and distributing it in Connecticut. Rivera testified that he sold heroin for Johnson inside the Dutch Point Housing Project in Hartford, Connecticut. Rivera also testified about accompanying Johnson to purchase heroin in Texas, where Rivera tested the narcotics to ensure its quality. In addition to Rivera's

testimony, the government also played tapes of conversations they had recorded as a result of wiretaps, and presented testimony of Special Agents of the DEA. The jury returned a verdict of guilty on both counts.

On February 27, 1996, this court sentenced the defendant to a term of 320 months imprisonment, and eight years of supervised release. The government introduced transcripts of the testimony of Raul Rivera and a Hartford Police Detective, and presented police reports of several arrests and complaints regarding narcotics trafficking at the Dutch Point Housing Project. Johnson objected to the findings of the pre-sentence report regarding the amount of heroin attributed to him and his operation, and the enhancements calculated. He based his objections on the lack of credibility of witness Raul Rivera. Johnson also challenged the consideration of his December, 1984, state conviction for conspiracy to possess narcotics with intent to sell, arguing that he had not made a knowing and intelligent waiver of his rights when he pleaded guilty in that case. The court rejected these claims and found that Johnson was responsible for the amount of heroin indicated in the pre-sentence report, but departed downward to the offense level found at the first sentencing, and sentenced Johnson to 320 months, the same sentence as in the first sentencing. Petitioner appealed this conviction and sentence and the Second Circuit affirmed. On March 11, 1997, the Supreme Court denied the petitioner's petition for writ of certiorari.

### *LEGAL ANALYSIS*

### I. *Procedural Bar of Claims*

On direct appeal, Johnson only challenged the jury selection process and his sentence, failing to raise the ineffective

assistance of counsel claims he now brings before this court. The failure of a federal defendant to raise an issue on direct appeal will bar the defendant from raising the issue in a habeas petition for the first time absent a showing of both " 'cause' for the waiver and 'actual prejudice' resulting from the alleged waiver." *Reed v. Farley*, 512 U.S. 339, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994)(quoting *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). *See also, United States v. Canady*, 126 F.3d 352, 359 (2d Cir.1997). Under the cause and prejudice standard, defendant bears the burden of showing such cause and prejudice. *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Johnson has failed to meet his burden.

Defendant asserts that he has cause for his failure to raise his claims on direct appeal because he received ineffective assistance of appellate counsel. Attorney error does not satisfy the cause requirement "[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In *Strickland*, the Supreme Court set forth the yardstick for measuring claims of ineffective assistance of counsel:

> The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled. (citations omitted) ... The Sixth Amendment recognizes the right to assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.

*Id.* at 685, 104 S.Ct. 2052.

While recognizing that "the right to counsel is the right to effective assistance of counsel", *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the *Strickland* Court created a two-pronged showing a defendant must make in order to prevail on an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

Accordingly, Johnson must overcome the strong presumption that his counsel's conduct was reasonable and show that it fell below an objective standard of reasonableness under prevailing professional norms. Judicial scrutiny of counsel's performance must be highly deferential. The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances and the reasonableness of counsel's conduct must be judged as of the time of counsel's conduct. *Strickland*, 466 at 688–90, 104 S.Ct. 2052.

Under the second prong of *Strickland*, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692, 104 S.Ct. 2052. In other words, an error by counsel, even if professionally unreasonable, does not warrant setting aside a conviction, or a sentence, if the error had no effect. If the petitioner fails to satisfy one prong of the *Strickland* analysis, the court need not

consider the other. *Id.* at 697, 104 S.Ct. 2052.

The Second Circuit has held that an attorney's failure to file a notice of appeal after conviction is not, without more, constitutionally ineffective assistance. The Court explained that cause "must be something *external* to the petitioner, something that cannot be fairly attributed to him." *Marone v. United States,* 10 F.3d 65, 67 (2d Cir.1993) (quoting *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640)(emphasis in original). In *Marone,* the Second Circuit concluded that because the defendant had not instructed his attorney to file a notice of appeal, the defendant's failure to raise by appeal the claims subsequently asserted in his Section 2255 motion could be attributed to his own conduct, and thus was not cause external to him sufficient to overcome waiver of these claims. *Id.* at 67.

■ Johnson briefly states in the introduction to his petition that his counsel was ineffective for failing to include his present claims in his direct appeal. He makes no claim that he asked his attorney to appeal the issues he now brings before the court. Because he does not allege something more than his attorney failing to raise these claims on direct appeal, under *Marone,* Johnson has not shown cause for his procedural fault.

Further, in *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the Supreme Court rejected the argument that appellate counsel had an obligation to raise every non-frivolous ground for reversal. Rather, the court recognized that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751, 103 S.Ct. 3308. Johnson's counsel did appeal his conviction, asserting claims challenging the jury composition

and his sentencing. Because Johnson cannot establish ineffective assistance of appellate counsel simply by pointing to issues which could have been raised by counsel on appeal but were not, his assertion lacks merit.

Finally, because we find no merit in Johnson's Section 2255 claims, appellate counsel cannot be found ineffective for failing to have raised the claims on direct appeal. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). *See also, United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999), *cert. denied,* 531 U.S. 811, 121 S.Ct. 33, 148 L.Ed.2d 13 (2000) ("failure to make a meritless argument does not amount to ineffective assistance."); *United States v. Kirsh,* 54 F.3d 1062, 1071 (2d Cir.)("the failure to make a meritless argument does not rise to the level of ineffective assistance"). We will briefly address the merits of each of these claims seriatim.

## II. Ineffective Assistance of Counsel Claims

### A. Trial Counsel's Failure to Object to the Excusal of a Black Juror

■ Petitioner's first claim is that his trial counsel was ineffective for failing to object to the excusal of a black woman, when she was excused by Judge Dorsey because she did not have a child-care provider for her daughter. (Tr.: September 14, 1995, 184: 3–16). Petitioner claims the dismissal improperly affected the racial makeup of the jury pool. This court finds this claim to be frivolous. It is well established that a trial court may excuse a juror for cause, "upon a showing of undue hardship or extreme inconvenience." 28 U.S.C. § 1866(c)(1). Under Fed.R.Crim.P. 24(c), district courts have broad discretion to replace jurors at any time before the jury retires for deliberations. Such a decision will be upheld unless the defendant shows

bias or prejudice. *United States v. Gambino*, 951 F.2d 498, 502–03 (2d Cir.1991), *cert. denied*, 504 U.S. 918, 112 S.Ct. 1962, 118 L.Ed.2d 563 (1992).

■ Specifically, where a juror's schedule prevents her from fully participating in the trial, a court has broad discretion to remove the juror. *United States v. Reese*, 33 F.3d 166, 173 (2d Cir.1994). Trial courts have long recognized that jurors with young children should be excused for cause when they are unable to obtain child-care for their children. Because a reasonable basis existed for the court to excuse the juror, failure to object to the juror's excusal does not constitute ineffective assistance of counsel. *Arena*, 180 F.3d at 396.

■ In addition, there is no merit to the claim that the excusal of the juror led to a discriminatory result in Johnson's trial. It is a well settled principal that, if a jury is lawfully selected "free from any taint of invalid exclusions or procedures in selection and from which all disqualified for cause have been excused, no cause for complaint arises merely from the fact that the jury finally chosen happens itself not to be representative of the panel or indeed of the community. There is, under such circumstances, no right to any particular composition or group representation on the jury." *Frazier v. United States*, 335 U.S. 497, 507, 69 S.Ct. 201, 93 L.Ed. 187 (1948).

The fact that one of the excused jurors was black does not automatically lead to a discriminatory result. In this case, the court similarly accommodated a white juror, who had to take care of her elderly father, by placing her on a panel for a shorter trial rather than this more lengthy trial. The race of the jurors played no part in the decision of the court as to whether or not it was appropriate to excuse them for cause. Johnson's jury panel was lawfully selected in accordance with the standards required by federal law. Accordingly, it is clear that the court had just cause to excuse the juror, and it acted within its broad discretion. For all the above reasons, this court rejects petitioner's claim.

## B. Trial Counsel's Failure to Make a Batson Challenge to the Government's Peremptory Strike of a Black Juror

■■ Petitioner next charges that his trial counsel's failure to object to the government's peremptory strike of a black juror constitutes ineffective assistance of counsel. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court established that a pattern of strikes against members of a racial group can give rise to an inference of discrimination. However, "[o]nly a rate of minority challenges significantly higher than the minority percentage of the venire would support a statistical inference of discrimination." *United States v. Alvarado*, 923 F.2d 253, 255 (2d Cir.1991). Further, the Supreme Court has since made clear that, if the government can provide a race neutral reason for striking the juror, such a showing would sufficiently rebut the allegations of a discriminatory motive. *Hernandez v. New York*, 500 U.S. 352, 357–60, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Here, the juror whom the government struck had informed the court that his son had been arrested on "dope charges". (Tr.: September 14, 1995, 146: 24–5). As this was a narcotics trafficking prosecution, there was clearly a race neutral explanation for the government's peremptory strike. Therefore, because a Batson challenge would have failed, Petitioner's counsel was not ineffective for failing to make such a claim.

## C. Trial Counsel's Failure to Request Questioning of Two Jurors

■ During jury selection, it was determined that two of the prospective jurors

had also served as jurors at Johnson's first trial, in which the jury returned a guilty verdict. Johnson now claims that, because these jurors were allowed to go to lunch at the same time as the rest of the jurors, the panel could have been informed of information regarding the first trial that was prejudicial to the petitioner. He therefore asserts that his counsel was ineffective for failing to request that the two potential jurors in the panel be questioned before they were allowed to break for lunch, and for failing to request that the empaneled jurors themselves be questioned to ensure they did not hear these jurors say anything prejudicial about the petitioner.

■ Decisions regarding when to question jurors and the manner of that inquiry are generally left to the trial judge's broad discretion. *United States v. Ruggiero*, 928 F.2d 1289, 1301 (2d Cir.1991). The record shows that Johnson's attorney did bring the presence of the two jurors to the court's attention as soon as Johnson made him aware of the issue. Judge Dorsey then questioned the jurors about their knowledge of the defendant and their communication with other jurors regarding the defendant. The jurors informed the court that they had recognized the defendant, but did not say anything to anybody on the panel, as they were not sure if he was the same person. The court instructed them to remain silent about their prior service as jurors on the earlier trial, and later excused them from the panel for this trial. (Tr.: September 14, 1995, 146: 201–2). Petitioner's trial counsel therefore succeeded in sequestering the potential jurors from the rest of the jury, before they had disclosed any harmful information or tainted the jury in any way. The court undertook appropriate precautionary measures to protect petitioner's right to an unbiased jury. Accordingly, this court rejects petitioner's claim that his counsel was ineffective and that he was deprived of an impartial jury.

## D. Trial Counsel's Failure to Request that the Court Question White Jurors on Racial Bias

■ Petitioner next claims that he received ineffective assistance of counsel at his trial because his attorney did not request that the Court question the white jurors as to their feelings about blacks following the O.J. Simpson trial. The verdict in the Simpson trial was announced on October 3, 1995, two days before the jury in Johnson's trial found him guilty. Petitioner asserts that the Simpson verdict created a high potential for "unconscious racism" which would likely have an effect on the jury's deliberations. (Petitioner's Memorandum in Support of § 2255 [Doc. 73] at 20). He argues that the publicity surrounding the O.J. Simpson trial was so prejudicial as to require a mistrial.

■ The Second Circuit made clear in *United States v. Gigante* that "[t]he trial court has broad discretion in determining whether prejudice has resulted from publicity during trial." 729 F.2d 78, 82 (2d Cir.1984) *(citing United States v. Persico*, 425 F.2d 1375, 1382 (2d Cir.), *cert. denied*, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970)). The Court emphasized that each case must turn on its own facts, and the essential question is whether the jurors returned the verdict with the requisite impartiality. *Id.* While those cases involved media coverage of the actual defendants on trial, rather than a defendant in a separate case, the legal standard is still applicable to the case before us.

In determining whether prejudice had resulted from media publicity during a trial, one factor the courts looked to was whether the publicity focused directly on the issue of the defendant's guilt or innocence with respect to the charges in the ongoing trial. *United States v. Persico*, No. S84 Cr. 809, 1986 U.S. Dist. LEXIS 30240, *4 (S.D.N.Y.1986); 729 F.2d at 82. Be-

cause the media coverage Johnson complains of had nothing to do with the issues in his case, let alone his guilt or innocence, Johnson's claim fails. *See e.g. United States v. Neal*, No. 96–4214 1997, U.S.App. LEXIS 28742, *10–11 (4th Cir.1997). In *Neal*, the Fourth Circuit found a district court did not abuse its discretion in denying the defendant's attorney's motion to question jurors about the effect of the O.J. Simpson trial on their verdict. The Court reasoned that "[e]ven if the jurors saw the verdict in the Simpson case, it would not have been an improper outside influence because it had nothing to do with [the defendant's] case". *Id.* Johnson was convicted of possession with intent to sell narcotics, a charge completely unrelated to the murder charges in the O.J. Simpson trial. This Court is therefore satisfied that the jurors retained the requisite impartiality despite the verdict announced in the O.J. Simpson trial, and that there was no possibility for a mistrial.

### E. Trial Counsel's Failure to Object to the Court's Refusal to Allow Ex Parte Testing of a Tape Recording

Petitioner's fifth ineffective assistance claim alleges that his trial counsel was ineffective for failing to object to the court's refusal to allow ex parte testing of a tape recording that was admitted at trial. However, petitioner admits in his § 2255 Motion and the record shows that Johnson's counsel did in fact move for release and examination of the tape. (Defendant's Motion for Release of Tape [Doc. 93–1], September 11, 1995). This court granted his motion, on the condition that the government would transport the tapes to the defense expert's office in order to preserve the chain of custody of the tape. *Id.* Petitioner claims, however, that his counsel should have insisted on being present at the transportation and testing of the tape, and, because he was not present, he cannot be sure the tape was not altered. On the contrary, this court finds that defense counsel made appropriate arrangements in regard to testing the tape, in accordance with the ruling this court made. The record reflects that proper procedural safeguards were instituted in an attempt to preserve the chain of custody and the authenticity of evidence preserved, thereby ensuring that the defendant's constitutional rights were protected. Since Petitioner's underlying evidence-tampering claim is meritless, counsel cannot be found ineffective for failing to assert the claim. *Arena*, 180 F.3d 380, 396; *Kirsh*, 54 F.3d 1062, 1071. *See also Ennis v. Walker*, No. 00 Civ. 2875, 2001 WL 409530 at *22 (S.D.N.Y. April 6, 2001) ("Because there would have been no merit to any of the objections [petitioner] contends defense counsel should have made, counsel's failure to object does not constitute ineffective assistance.").

### F. Prosecutorial Misconduct: Perjured Testimony

██ Johnson next claims that during the trial the government knowingly elicited false information from a key witness, Raul Rivera. In order to overturn a conviction based on perjured testimony of a witness, the petitioner must show that the witness actually committed perjury, that the evidence was not previously discoverable with due diligence, and that the new evidence is material. *United States v. Moore*, 54 F.3d 92, 99 (2d Cir.1995). *See also, United States v. Locascio*, 6 F.3d 924, 949 (2d Cir.1993) (new trial is required only if newly discovered evidence is "material, non-cumulative, and would probably lead to an acquittal.").

██ Upon close examination of the record, this court finds that petitioner has failed to show any substantial evidence proving the witness committed perjury, and certainly has not put forward new evidence that was not available during the trial. He bases this assertion on inconsis-

tencies between the witness' statements at trial and his statements during a previous hearing, and challenges some of Rivera's factual statements as untrue. Yet he fails to demonstrate how Rivera's statements are false, and further bases all his reasoning on testimony during the trial, none of which is newly discovered evidence as required for a cognizable claim.

▪ Further, "[t]o the extent petitioner complains that the prosecution misled the court, this claim would warrant habeas relief only if he could show that he was thereby prejudiced." *Soares v. United States*, 66 F.Supp.2d 391, 404 (S.D.N.Y. 1999). It is unlikely that the jury's verdict would have been different without Mr. Rivera's testimony on the particular statements Johnson challenges. Johnson challenges small details Rivera recounted, such as the last time he saw one of the other individuals he claimed worked for Johnson. None of the information Johnson challenges as untrue has a direct effect on his guilt or innocence. In addition to Rivera's testimony, the government presented an overwhelming amount of evidence showing that Petitioner was involved in drug trafficking. This included documents, physical evidence which tied the defendant to the distribution of heroin, and tape recordings of Johnson's communications regarding his illegal conduct. The evidence presented throughout the trial was consistent with Rivera's testimony.

Accordingly, there is no reasonable likelihood that the jury would have acquitted petitioner had Raul Rivera not testified as to the collateral matters now challenged, and therefore the Petitioner's trial was not jeopardized by Rivera's testimony. *See Soares* 66 F.Supp.2d at 405 ("To secure relief, a petitioner must show that the challenged remarks, when viewed in context, were 'so egregious' as to cause 'actual prejudice,' specifically, 'a substantial and injurious effect or influence in determining

the jury's verdict.'") (*quoting Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998))

### G. Trial Counsel failed to Object to the Introduction of Papers Recovered from Petitioner's Wallet

▪ At the time of Petitioner's arrest on November 23, 1993, Agent Aviles found a piece of paper with a list of names on it. During Petitioner's trial, Agent Aviles read from the paper the name of George Wilson, who was previously identified by Rivera as one of the men who worked for Johnson at Dutch Point. (Tr.: October 2, 1994, 799: 4–11; 852: 13–20). Petitioner now asserts this paper was privileged work-product material, because, he alleges, his attorney had instructed him to locate the individuals on the list because they were related to a prior criminal matter. Therefore, he claims that his attorney should have objected to its admission into evidence.

The work-product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). The privilege does under some circumstances extend to acts of an attorney's agent, if the agent acts at the direction of the attorney when it creates a document. *Id.* at 238, 95 S.Ct. 2160. This court need not decide whether or not the paper at issue would constitute work product because, by failing to claim privilege until this instance, petitioner waived any privilege that may have existed at one time.

▪ Attorney privilege can be waived by the disclosure of protected documents, even if disclosure was inadvertent. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234 (2d Cir.1993) ("[o]nce a party allows an adversary to share the otherwise privileged thought processes of counsel, the

need for the privilege disappears.") Further, delay in attempting to protect a privileged document, as occurred here, may result in waiver of the privilege. *See Stoner v. N.Y. City Ballet Co.*, 2002 WL 31875404, *2, U.S. Dist. LEXIS 24644, *5 (S.D.N.Y. 2002) (explaining "the promptness of the producing party's effort to remedy the situation once the error was discovered" is one factor that a court considers when determining if a party has waived privilege). In this case, Petitioner failed to raise the issue of work-product when the document was seized in 1993, throughout two trials, and throughout both his appeals. Accordingly, the delay in raising the privilege resulted in its waiver.

■ Further, Johnson's counsel's failure to object to the admission of this list of names does not constitute ineffective assistance of counsel. When assessing counsel's performance, courts " 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy." *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir.1998) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Accordingly, acts or omissions of counsel that might be considered "sound trial strategy" do not constitute ineffective assistance, even if they turn out to be unsuccessful. *United States v. Best*, 219 F.3d 192, 201 (2d Cir.2000). *See also Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (noting that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

The decision of petitioner's trial counsel to allow the names into evidence was likely to have been strategic and intentional. Without reciting the entire trial record in full, this court is confident that there are many plausible reasons that counsel allowed the evidence to be admitted without objection. For example, as evidenced by Johnson's counsel's closing arguments, it is clear that he was trying to convince the jury that Johnson was setting up a legitimate restaurant business, rather than intending to sell heroin. (Tr.: October 4, 1995, 166–74). To have objected to the list of names that was seized from Johnson during the search of his hotel room would have been inconsistent with this defense. Counsel's performance was therefore objectively reasonable under professional standards, and petitioner's claim fails.

**H. Defense Counsel's Failure to Call Potential Exonerating Witnesses**

■ Petitioner alleges that his trial counsel was ineffective for failing to use proper investigative procedures to locate two potential witnesses. Johnson now claims these witnesses could have testified against the government's contention that Johnson had employed them to drive Rivera to deliver heroin. Petitioner acknowledges that his trial counsel attempted to subpoena these two individuals, but was unsuccessful as they had moved out of town. He now alleges his counsel should have made a more diligent effort to find these witnesses.

Even if trial counsel could have made a more thorough investigation than he did, this failure would not rise to a level of ineffective assistance of counsel. The Supreme Court has made clear that "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.' " *Burger v. Kemp*, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) *quoting United States v. Cronic*, 466 U.S. 648, 665, n. 38, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Kemp*, the Court asserted that "[w]e have decided that strategic choices made after less than complete investigation are reasonable precisely

to the extent that reasonable professional judgments support the limitations on investigation." 483 U.S. at 794, 107 S.Ct. 3114 *(citing Strickland,* 466 U.S. at 690–691, 104 S.Ct. 2052. As *Strickland* instructs, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.* at 691, 104 S.Ct. 2052. Specifically, the Second Circuit has found that "[t]he tactical decision of whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation."). *United States v. Schmidt,* 105 F.3d 82, 90 (2d Cir.1997).

Applying this standard to the case before us, this court finds that it was reasonable for Johnson's trial counsel to decide not to pursue these witnesses further. Johnson provides no reason for the court to believe these witnesses would have exonerated him. In contrast, there is a distinct possibility that the witnesses may have further inculpated the petitioner by testifying that they had in fact been involved in the transportation and sale of heroin, as others testified to in court, or refused to testify citing their Fifth Amendment Privilege. Accordingly, counsel's decision not to make further efforts to find the witnesses or call them during the trial in no way rendered his representation ineffective.

### I. Defense Counsel's Failure to Object to the Testimony of Raul Rivera, in Violation of 18 U.S.C. § 2255

■ Finally, petitioner argues that the admission of coconspirator testimony from Raul Rivera at his trial violated 18 U.S.C. § 201(c)(2), because the government promised the witness leniency in exchange for his truthful testimony. Section 201(c)(2) provides that "whoever ... directly or indirectly, gives, offers or promises anything

of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial... before any court...shall be fined under this title or imprisoned for not more than two years, or both." 18 U.S.C. § 201(c)(2) (1994). To support his proposition, Johnson cites to *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998). However, the full Tenth Circuit Court of Appeals reversed the original decision expressly, en banc, finding that 18 U.S.C. § 201(c)(2) does not apply to any Assistant United States Attorney acting within his or her official capacity. *United States v. Singleton,* 165 F.3d 1297 (10th Cir.1999) (en banc) *cert. denied,* 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999). The Second Circuit has since adopted the panel's reasoning refusing to apply 18 U.S.C. § 201(c)(2) to court-approved cooperation agreements, such as the one at issue before this court. *United States v. Stephenson,* 183 F.3d 110, 118 (2d Cir.1999). Accordingly, Petitioner's *Singleton* claim fails.

### III. *Sentencing Claims*

■ Petitioner claims that his sentence should be overturned because the court improperly considered a prior conviction in Connecticut state court for conspiracy to possess narcotics with intent to sell, which he now claims is invalid. Johnson asserts that he was coerced into pleading guilty to the previous offense by the judge who accepted his guilty plea, and therefore it should be nullified. He did not raise this claim on appeal and has not articulated a reason for this failure, nor did he explain why his counsel was ineffective for failing to preserve the error. However, because Petitioner alleges a constitutional violation, we will review the claim for its merits. *See Bousley v. United States,* 523 U.S. 614, 626, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)

("a guilty plea based on . . . misinformation is constitutionally invalid.").

 A "strong presumption of verity" attaches to admissions of guilt at a plea allocution. *United States v. Gonzalez,* 970 F.2d 1095, 1101 (2d Cir.1992) (quoting *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Hirsch,* 239 F.3d 221, 225 (2d Cir.2001). Upon review of the record, there is no factual basis for the claim that the state court Judge coerced Petitioner into pleading guilty. Johnson was appointed a lawyer for his sentencing, and Johnson himself admits that this attorney "briefly discussed what petitioner was arrested for, the amount of time he could expect to be incarcerated, and what to expect when he appeared at court" on the day of his sentencing. (Petitioner's Memorandum in Support of § 2255 [Doc. 73] at 41). The transcript of the proceeding at which Johnson pleaded guilty establishes beyond cavil that Johnson admitted his guilt and in his own words stated that his plea was not coerced and that no promises had been made to induce it. Therefore, this claim must fail.

 Johnson also alleges that his sentencing is invalid because the calculation of his offense level was based on uncorroborated testimony of a cooperating witnesses. Johnson did assert this challenge on appeal, and the court of appeals rejected this claim. *United States v. Rivera,* 104 F.3d 354 (2d Cir.1996) ("The findings on which the district court based the sentence were adequately supported and were within the sentencing judge's discretion."). Motions under 28 U.S.C. § 2255 foreclose re-litigation of issues raised and rejected on direct appeal. *Riascos–Prado v. Unites States,* 66 F.3d 30, 33 (2d Cir.1995).

Accordingly, this court declines to consider this claim again.

Finally, the petitioner argues that his sentence should be vacated based on the new rule of law set out in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the Supreme Court held that any factor that increases the penalty for a crime beyond the statutory maximum prescribed, should be considered an element of the offense, rather than a mere sentencing factor, and accordingly, must be submitted to the jury and proven beyond a reasonable doubt. 530 U.S. at 489–490, 120 S.Ct. 2348. Accordingly, *Apprendi* applies when a drug quantity determination imposes a sentence beyond the maximum penalty. Petitioner claims that this Court violated *Apprendi* by improperly sentencing him to 320 months imprisonment, in excess of the statutory maximum.

 The Second Circuit recently held that *Apprendi* "does not apply retroactively to initial section 2255 motions for habeas relief." *Coleman v. United States,* 329 F.3d 77, 79 (2d Cir.2003). Because Johnson's Petition is an initial section 2255 motion, *Apprendi* will not be applied retroactively to his conviction or sentence. However, even assuming *Apprendi* was applied retroactively to his case, petitioner's *Apprendi* challenge lacks merit. Johnson was sentenced to 320 months because he had a prior qualifying narcotics conviction. *Apprendi* specifically states that it does not apply to enhancement of maximum sentences based on prior convictions. *Id.* at 490, 120 S.Ct. 2348. Johnson's sentence of 320 months was well supported by the evidence upon which the Court based the sentence, as recognized by the court of appeals rejection of Johnson's original appeal. *Rivera,* 104 F.3d 354, 1996 WL 665721 at *3. Accordingly, Johnson's *Apprendi* claim fails.

*CONCLUSION*

This Court has considered all of the petitioner's claims in his section 2255 petition and has found that Johnson has failed to meet his burden of establishing that he is entitled to relief. A certificate of appealability shall not issue, the Petitioner having failed to make a substantial showing of the denial of a constitutional right. His Petition [Doc. No. 172] and Amended Motions [Docs. No. 188 and 197] are hereby DENIED.

SO ORDERED.