UNITED STATES of America, Appellee,

v.

K. Douglas JOLLY, Defendant–Appellant.

No. 668, Docket 96–1359.

United States Court of Appeals,
Second Circuit.

Submitted Nov. 19, 1996.

Decided Dec. 5, 1996.

Alexander B. Perry, Hoosick Falls, New York, for Defendant–Appellant.

Thomas J. Maroney, United States Attorney, Northern District of New York, Albany, New York (Thomas Spina, Jr., Assistant United States Attorney, Kimberly I. Gould, Legal Intern, of counsel), for Appellee.

Before WINTER, ALTIMARI, and WALKER, Circuit Judges.

WINTER, Circuit Judge.

K. Douglas Jolly appeals from a sentence imposed by Chief Judge McAvoy after Jolly pleaded guilty to mail fraud. Jolly was a corporate president and principal who procured loans to the corporation through fraud. The district court enhanced Jolly's offense level for abuse of a position of trust under United States Sentencing Guidelines § 3B1.3. We hold that a person in Jolly's circumstances is not in a position of trust vis-à-vis lenders and remand for resentencing.

## BACKGROUND

At pertinent times, Jolly was the president and principal of Microtech Management Services ("Microtech") in Salem, New York. Microtech was a company formed to develop and market a package of computer hardware and software designed to assist dairy farmers in monitoring their daily cash flow and profitability. Between May 1, 1988 and December 1, 1988, Jolly raised $500,000 in the form of loans from 24 investors. Each lender received a note from Microtech and options to purchase stock in the company. The note provided for 10% annual interest payable quarterly for four years with an additional 10% annual interest to be deferred until the end of the four years. At the end of five years, investors could opt for the return of their principal or exercise their options to purchase the stock. The loans were guaranteed personally by both Jolly and one James Good.

In 1989 and 1990, Jolly mailed annual reports to the lenders. The report covering 1988 claimed gross sales of $350,000 and a net profit of $50,000. The report covering 1989 claimed gross sales of $1,144,500 and a net after-tax profit of $239,207. It also projected gross sales of $2,660,000 and a net profit of $490,000 for 1990.

In the fall of 1990, Jolly solicited additional investors and raised an additional $310,000. Good aided in raising these funds and sent letters repeating various statements about revenues and profits contained in Jolly's reports. The new investors were to receive a level payout of principal and interest of 18%, payable monthly. The loans were to be secured by income from leases of Microtech's products.

The various reports about Microtech's ongoing business and its revenues and profits were lies. Microtech had no employees, no payroll, and no sales in 1989 or subsequent years. Jolly used the funds he raised, *inter alia*, to pay interest to early investors, financial obligations of Northstar, another company owned by Jolly, and personal expenses.

After the inevitable collapse, Jolly pleaded guilty to mail fraud. Over Jolly's objection, the district court imposed a two-level upward adjustment in offense level under Guidelines § 3B1.3 for abuse of a position of trust. This appeal followed.

## DISCUSSION

■ Whether Jolly occupied and abused a position of trust is a legal question that we review *de novo*. *United States v. Broderson*, 67 F.3d 452, 455 (2d Cir.1995). Guidelines § 3B1.3 provides, in relevant part, that "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." Jolly argues that as president and principal of Microtech he did not stand in a position of trust with respect to those who lent money to the corporation. We agree.

The Commentary to Section 3B1.3 indicates that " '[p]ublic or private trust' refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)." We held in *Broderson* that the abuse of trust enhancement applies only where the defendant has abused discretionary authority entrusted to the defendant by the victim. 67 F.3d at 456. Broderson was an employee of

a defense contractor who had negotiated a contract with the government but failed to provide certain information to the government required by the Truth in Negotiations Act and Federal Acquisition Regulations. The district court enhanced Broderson's offense level for abuse of a position of trust. Broderson concededly had "professional or managerial discretion" in his capacity as a vice president of his company. We held, however, that for purposes of Section 3B1.3 the discretion must be entrusted to the defendant by the victim. *Id.* at 456. We also noted by way of illustration that, if Broderson had accepted a bribe from a party with whom he was negotiating to sweeten the terms of a deal with his employer, Broderson would have abused his position of trust vis-à-vis his employer. In contrast, Broderson's relationship to the government was governed by the explicit commands of the Truth in Negotiations Act and Federal Acquisition Regulations. *Id.*

■ Limiting an enhancement for abuse of trust to the misuse of discretionary authority entrusted by the victim or on the victim's behalf is consistent with the examples given in the Commentary. They each involve factual situations in which the defendant occupies a position vis-à-vis the victim that is in the nature of a fiduciary relationship. In the present case, therefore, we must consider whether Jolly held a position of trust vis-à-vis the investors. We conclude that he did not.

■ Jolly was not in a position generally recognized as being in the nature of a fiduciary. Borrower-lender relationships are typically at arm's-length, and a firm's obligations to creditors are generally regarded solely as contractual. *See Katz v. Oak Indus., Inc.*, 508 A.2d 873, 879 (Del.Ch.1986). Where debt instruments are concerned, even a contract claim asserting a breach of an implied covenant of good faith by the debtor firm must relate to an explicit contractual provision of the loan. *See Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F.Supp. 1504, 1521–22 (S.D.N.Y.1989). A corporation's management of course owes a fiduciary obligation to shareholders, *see Guth v. Loft*, 5 A.2d 503, 510 (Del.1939), and the looting of a

corporation would likely lead to an enhancement for abuse of trust if not included in the particular offense characteristic. However, management has substantial discretionary control over corporate assets because public shareholders cannot engage in direct monitoring of management's conduct or cheaply obtain protective contractual provisions. Frank H. Easterbrook & Daniel R. Fischel, *The Economic Structure of Corporate Law* 90–93 (1991). In contrast, fraud in the initial sale of shares might not result in such an enhancement because such transactions, like loans, are generally at arm's-length.[1]

Nor does the record disclose any relationship with particular investors in which Jolly occupied a position of influence beyond that enjoyed by garden-variety borrowers. The money was not entrusted to Jolly in any ordinary sense of the term. The loans bore none of the characteristics of money put in trust. Microtech was obligated to repay the principal or, in the case of the first loans, issue stock at the lender's option. The notes specified an elevated interest rate and purported to provide a security interest to some of the later lenders. Jolly was personally liable on the loans. If Microtech prospered, the terms of the notes would constitute a ceiling on its obligations. The provisions of the loans, therefore, were hardly hallmarks of discretion or of a trust.

Moreover, Section 3B1.1 precludes an enhancement where the abuse of trust is included in the specific offense characteristic. Where fraud occurs in arm's-length transactions not involving fiduciary-like relationships, the "trust" that is "abused" is simply the reliance of the victim on the misleading statements or conduct of the defendant. The trust in short is a specific offense characteristic of fraud, and a Section 3B1.3 enhancement is inappropriate. In the instant matter, the lenders' trust in Jolly was simply their reliance on his representations about Microtech's ongoing business and the appearance created by the repayments. Such reliance is the hope of every defendant who engages in fraud.

Our conclusion that Jolly's sentence should not be enhanced for abuse of a position of trust follows in part from *Broderson* and is also consistent with the law in other circuits. For example, in *United States v. Mullens,* 65 F.3d 1560 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1337, 134 L.Ed.2d 487 (1996), the court overturned an abuse of trust enhancement where the president and sole shareholder of a company operated a ponzi scheme involving fake investment opportunities in limited partnerships. The court rejected the government's argument that the victims' confidence in Mullens as a result of membership in the same country club created a relationship of trust. It also rejected the argument that Mullens' role was like that of an investment advisor. It stated:

> Mullens may have touted himself as a "gifted investor who the Omni investors could trust" and an "investment and financial advisor," as the government argues. To our knowledge, however, there was no evidence Mullens held himself out as an investment broker, or advertised Omni as an investment brokerage firm. If he had run a legitimate but unprofitable enterprise, Mullens would have been considered nothing more than a business owner who offered investment opportunities to the public that soured. We see nothing in these circumstances to support the conclusion that a position of private trust between Mullens and his victim was created.

65 F.3d at 1566–67. The court further noted that all fraud involved some component of misplaced trust. *Id.* at 1567.

Similarly, *United States v. Brunson,* 54 F.3d 673, 677 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 397, 133 L.Ed.2d 317 (1995), held that there was no abuse of trust in an arms-length commercial transaction. It noted that "[i]n the typical case where § 3B1.3 applies, the victim is a business and the defendant is an employee who has taken advantage of the knowledge and responsibilities acquired by virtue of his or her position

---

1. Of course, some intracorporate transactions, such as a redemption, *see Zahn v. Transamerica,* 162 F.2d 36, 45–48 (3d Cir.1947), or the purchase of a large bloc of newly issued shares by insiders, *see Bennett v. Breuil Petroleum Corp.,* 99 A.2d 236, 239 (Del.Ch.1953), might violate a fiduciary obligation.

within the company .... [or] where a fiduciary or personal trust relationship exists." *Id.* The court went on to find that the relationship between the defendant and the company he dealt with fraudulently (not his employer) was an arm's-length commercial relationship and therefore not characterized by trust or freedom to commit difficult-to-detect wrongs. The court noted that the defendant abused confidence placed in him by the victim but that this was true in all fraud cases. *Id.*

The government relies heavily on *United States v. Queen,* 4 F.3d 925 (10th Cir.1993), *cert. denied,* 510 U.S. 1182, 114 S.Ct. 1230, 127 L.Ed.2d 575 (1994), in which an abuse of trust enhancement was upheld for a defendant who had obtained money by falsely holding himself out as the equivalent of an investment advisor/broker. *Id.* at 929. However, unlike borrowers, investment advisors and brokers are entrusted with discretion by their clients. Indeed, in *Brunson, supra,* the Tenth Circuit distinguished its decision in *Queen* precisely on the ground that Queen purported to offer a fiduciary relationship rather than an arm's-length transaction. 54 F.3d at 677; *see also Mullens,* 65 F.3d at 1566–67 (distinguishing cases including *Queen* ).[2]

In contrast to Queen, Jolly held himself out as the president of a company seeking capital, not as an investment advisor. The government has provided no evidence that Jolly purported to be, or was in any way reasonably perceived as, "in essence a money manager who was entrusted with broad discretionary powers." For this reason, cases in which defendants held themselves out as investment advisors are entirely inapposite. *See, e.g., Queen, supra; United States v. Tardiff,* 969 F.2d 1283 (1st Cir.1992).

We therefore reverse and remand for resentencing. Because Jolly is presently incarcerated, we order that the mandate issue forthwith.

---

**2.** The government's brief is notable for its failure to cite or discuss the considerable authority that is adverse to its position, including *Broderson, Mullens,* and *Brunson.* Instead, it argues that *Queen* is "clearly applicable to the fraudulent scheme Jolly set up with regard to his investors." Gov't Br. at 12. Simply shepardizing the Tenth Circuit's decision in *Queen* would have disclosed the same circuit's decision in *Brunson.* Whether or not the defense cites or discusses applicable precedent, we expect the government to set out a fair and accurate description of relevant legal authority. That was not done in this case.