**UNITED STATES of America, Appellee,**

v.

**Gerald HIRSCH, Defendant–Appellant.**

**No. 99–1758.**

United States Court of Appeals, Second Circuit.

Submitted Nov. 30, 2000.

Decided Jan. 17, 2001.

Michael S. Kim, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney, and Christine H. Chung, Assistant United States Attorney, of counsel), New York, NY, for Appellee.

Lawrence H. Schoenbach, New York, NY, for Defendant–Appellant.

Before McLAUGHLIN and SACK, Circuit Judges, and CHATIGNY,* District Judge.

SACK, Circuit Judge:

Gerald Hirsch appeals from a judgment of conviction and sentence entered on December 21, 1999 by the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge* ) after he pleaded guilty to six counts of mail fraud in violation of 18 U.S.C. § 1341. On appeal he argues that the district court (1) abused its discretion by refusing to allow him to withdraw his guilty plea; (2) erroneously denied him a three-level reduction in offense level for acceptance of responsibility pursuant to § 3E1.1 of the United States Sentencing Guidelines; and (3) erred by imposing a two-level enhancement for abuse of trust under § 3B1.3 of the Guidelines. We affirm the judgment of the district court.

## BACKGROUND

Gerald Hirsch was indicted on September 30, 1997 on sixteen counts of mail fraud in violation of 18 U.S.C. § 1341. Nine counts related to a scheme to induce individuals to invest in mortgage participation certificates, and seven counts related to a scheme involving investments in certificates of deposit.

The facts surrounding the scheme were set forth in the Presentence Report prepared after Hirsch's guilty plea. According to the Report, during the relevant time period, Hirsch was the chairman of the Churchill Group, a collection of mortgage and security brokerages and other companies. Between 1987 and 1997, Hirsch operated two Ponzi schemes. The mortgage participation scheme involved the sale of certificates (totaling $15 million) that ostensibly represented fractional interests in mortgages. A mortgage lien was supposed to be filed in the investor's name, and the investor would be entitled to principal and interest payments made by the mortgagor. But in many instances Hirsch failed to make the promised investment, falsely told investors that their funds were invested in specific properties, sold the same share to different investors, or failed to inform investors of foreclosures. Inves-

* Honorable Robert N. Chatigny, of the United States District Court for the District of Connecticut, sitting by designation.

tors' money was used to pay the Churchill Group's obligations and to pay the returns of earlier investors. In 1993, Hirsch agreed to discontinue the mortgage participation scheme pursuant to the settlement of an action brought by the Securities and Exchange Commission, but he breached that agreement, continuing the scheme until 1997.

A second scheme involved Hirsch's representations that investors' money would be placed in safe and insured investments such as certificates of deposit (CD's). Hirsch sent false account statements to investors, showing the amount invested and the amount of interest earned. Some of the actual funds, however, were used to pay Hirsch's obligations. Other funds were placed in various uninsured investments. In 1997, both schemes collapsed and the Churchill Group entered bankruptcy. According to the government, the total amount lost by investors due to these two schemes was $30 million.

On April 2, 1999, Hirsch pleaded guilty to three counts relating to the mortgage participation scheme and three counts relating to the CD investment scheme. At his plea allocution, Hirsch stated that he understood the charges, that he had made material misrepresentations and omissions to investors with respect to each scheme, and that he knew that his acts were illegal at the time he committed them. He also admitted that he had not told investors about losses in their accounts and that interest was being paid from other funds rather than the actual investments.

On August 18, 1999, after the Probation Department submitted its report recommending a total offense level of 25 (the plea agreement had stipulated to an offense level of 23 or 25, depending on whether the court imposed an enhancement for abuse of trust) and a sentence of 71 months, the defendant submitted on August 18, 1999 a pro se letter as a "reply" to the Probation Department. In the letter, Hirsch challenged several of the Probation Department's findings, claimed that he was "not guilty of an intentional fraud," and asserted that a number of documents that had been lost by the bankruptcy receiver undermined the government's allegations. A second pro se letter from Hirsch, dated September 1, 1999, clarified some of the assertions in the August 18 letter, and apologized for erroneous or misleading statements he had previously made. On October 1, 1999, defense counsel submitted a letter stating that Hirsch claimed that the newly discovered documents undermined the government's "loss" figure and that Hirsch wished to withdraw his plea. Hirsch submitted an affidavit on October 29, 1999 in support of his motion to withdraw his plea. The affidavit described various documents and alleged that they showed that the government's loss figure was incorrect. It also stated that the new documents "substantiate [his] original belief" that he was not guilty of "criminal fraud." The government responded to Hirsch's letters on October 13, 1999 and November 13, 1999, disputing that the documents were newly discovered and disputing that they supported a lower loss figure. In addition, the government argued that the documents did not support Hirsch's claim of innocence.

The district court denied Hirsch's motion to withdraw his plea on November 24, 1999, finding that the "purported recent discovery of mortgage documents . . . would at best be relevant to the amount of restitution owed on three of the six counts to which he pled guilty; none of his reasons address the issue of guilt." The court emphasized that Hirsch was unable to articulate how the documents proved his innocence: "the evidence he cites . . . remain[s] illusory and the Defendant makes no semblance of an argument as to how such evidence would be exculpatory." The district court therefore concluded that Hirsch had not provided a "fair and just reason," Fed.R.Crim.P. 32(e), to permit withdrawal of the plea.

The district court also decided to impose a two-level enhancement under § 3B1.3 of

the Sentencing Guidelines for abuse of trust. The court's decision relied on Hirsch's "admitted personal relationships with his clients wherein they relied on and trusted him for continued investment in his worthless schemes."

Finally, the court refused to grant a three-level decrease for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines, because (1) Hirsch tried to withdraw his guilty plea; (2) the plea allocution "was protracted by the Defendant's apparent difficulty in accepting responsibility for his crimes"; and (3) his pro se submissions "effectively recanted" the admissions he made at the allocution.

On December 13, 1999, the district court sentenced Hirsch to a total of 97 months in prison (60 months for the mortgage participation scheme and 37 months for the CD investment scheme) and three years of supervised release, more than $30 million in restitution, and a $550 special assessment. Hirsch appeals the district court's decisions to deny the motion to withdraw the guilty plea; to impose an enhancement for abuse of trust; and to deny a reduction for acceptance of responsibility.

## DISCUSSION

### I. Withdrawal of Guilty Plea

█ Federal Rule of Criminal Procedure 32(e) states that a "court may permit [a] plea to be withdrawn if the defendant shows any fair and just reason." "A defendant has no absolute right to withdraw his plea of guilty." *United States v. Williams*, 23 F.3d 629, 634 (2d Cir.1994). Instead, the defendant bears the burden of showing that relief should be granted. *See United States v. Avellino*, 136 F.3d 249, 261 (2d Cir.1998). When considering a motion to withdraw a plea, a court should consider the potential prejudice to the government, but only if the defendant has set forth sufficient grounds to withdraw the plea. *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997). A court's refusal to allow the withdrawal of a plea is

reviewed for an abuse of discretion. *See id.*

█ In this case, the government does not contend that it would be prejudiced by the withdrawal, but rather that the defendant has failed affirmatively to justify it. Hirsch argues that new Churchill Group documents have been discovered that "substantiate[ ] appellant's original belief that his actions constituted mismanagement rather than criminal fraud." Appellant's Br. at 12. A claim of innocence can be a basis for withdrawing a guilty plea, but the claim must be supported by evidence. "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Torres*, 129 F.3d at 715.

█ Hirsch's claims of innocence in his motion and on appeal are wholly conclusory. As the district court observed, Hirsch's affidavit in support of his motion primarily discusses documents that would show, at most, a reduction in the amount of money lost by investors. In particular, Hirsch claims to have discovered documents that show that the Churchill Group had more assets than alleged in the Presentence Report. But Hirsch fails to explain, both in the affidavit and on appeal, how these additional assets demonstrate his innocence. The district court found that these documents have no bearing on Hirsch's guilt, and he has provided no reason to disturb the " 'strong presumption of verity' " that attaches to his admissions of guilt at his plea allocution. *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir.1992) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)).

### II. Sentence Reduction For Acceptance Of Responsibility

█ Although Hirsch's own appeal brief states that his admission of guilt at the plea allocution was "obvious[ly] reluctan[t]," and although Hirsch continues to protest his innocence, he nevertheless in-

sists that the district court erred in refusing to grant him a three-level reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines.

■ Section 3E1.1(a) provides for a two-level decrease "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," and § 3E1.1(b)(2) provides for an additional one-level decrease if, *inter alia*, the defendant qualifies for the two-level decrease in subsection (a) and if the defendant timely notifies authorities of his intention to plead guilty, thereby saving the government the resources needed to prepare for trial. U.S.S.G. § 3E1.1(a), (b)(2). The sentencing judge's decision whether to grant the adjustment is "entitled to great deference on review" because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, Application Note 5. *See also United States v. Reyes*, 9 F.3d 275, 280 (2d Cir.1993) ("[T]he sentencing judge is unquestionably in a better position to assess contrition and candor than is an appellate court.") (internal quotation marks omitted). Thus, the district court's determination of acceptance of responsibility is a factual finding that must be upheld unless it is "without foundation." *United States v. Volpe*, 224 F.3d 72, 75 (2d Cir.2000) (internal quotation marks omitted); *see United States v. Defeo*, 36 F.3d 272, 277 (2d Cir.1994).

Hirsch argues that he admitted guilt and responsibility for the crimes at his plea allocution. Although a guilty plea is "significant evidence" of acceptance of responsibility, it does not entitle the defendant "to an adjustment . . . as a matter of right"; other "conduct . . . that is inconsistent with . . . acceptance of responsibility" may outweigh a guilty plea. U.S.S.G. § 3E1.1, Application Note 3; *see United States v. Fredette*, 15 F.3d 272, 277 (2d Cir.1994).

■ An attempt to withdraw a plea, although not automatically disqualifying a defendant from seeking an adjustment, *see*

*United States v. Negron*, 967 F.2d 68, 73 (2d Cir.1992), is a well-established ground for denying the adjustment. Hirsch relies principally on *Negron*, where we explained that a sentencing court "must evaluate the reason for the attempt to withdraw the plea and assess the acceptance-of-responsibility question in that light." *Id.* We made clear, however, that the reason for withdrawing the plea must be unrelated to a claim of innocence. In order for a defendant to maintain his entitlement to an acceptance-of-responsibility adjustment while attempting to withdraw a guilty plea, his reason for demanding a trial must be "designed 'to assert and preserve issues that *do not relate to factual guilt* (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).' " *Id.* (quoting U.S.S.G. § 3E1.1, Application Note 2) (emphasis added). Hirsch attempts to side-step this problem by stating that the reason for his attempt to withdraw his plea was "newly acquired discovery materials." Appellant's Br. at 19. But this statement comes on the heels of considerable efforts in the district court and in the preceding pages of his appeal brief to characterize these "newly acquired discovery materials" as significant because they prove his innocence.

In addition to the attempt to withdraw the plea, the district court denied the adjustment because of Hirsch's "apparent difficulty in accepting responsibility for his crimes," which "protracted" his plea allocution, and because of his August 18, 1999 pro se submission, which "effectively recanted" his admission of guilt. The record shows that Hirsch has resisted admitting guilt at every step in the process. We therefore conclude that the district court's decision to deny an adjustment for acceptance of responsibility was not "without foundation." *Volpe*, 224 F.3d at 75.

### III. Sentence Enhancement For Abuse Of Trust

■ Section 3B1.3 of the Sentencing Guidelines provides for a two-level en-

hancement if the defendant "abused a position of public or private trust … in a manner that significantly facilitated the commission or concealment of the offense." To avoid double-counting, "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3. The district court imposed the enhancement, holding that Hirsch's "admitted personal relationships with his clients wherein they relied on and trusted him for continued investment in his worthless schemes are justification for enhancement here." The district court's determination that Hirsch occupied a position of trust is a legal question reviewed *de novo;* the court's determination that Hirsch abused that position in a manner that significantly facilitated the commission or concealment of the offense is a question of fact reviewed for clear error. *See United States v. Laljie,* 184 F.3d 180, 194 (2d Cir.1999).

*A. Whether Hirsch Occupied a Position of Trust*

■■■ An abuse of trust enhancement may not be imposed on a defendant convicted of fraud solely because of a violation of a legal obligation to be truthful and a victim's reliance on a misrepresentation. *See United States v. Broderson,* 67 F.3d 452, 455–56 (2d Cir.1995); *United States v. Jolly,* 102 F.3d 46, 49 (2d Cir.1996). Every fraud involves these elements. Instead, a court must determine the "extent to which the [defendant's] position provides the freedom to commit a difficult-to-detect wrong." *United States v. Barrett,* 178 F.3d 643, 646 (2d Cir.1999); *see United States v. Laljie,* 184 F.3d 180, 194 (2d Cir.1999). In other words, we have said, the defendant's position must involve discretionary authority. *See Broderson,* 67 F.3d at 455–56; *Jolly,* 102 F.3d at 48; U.S.S.G. § 3B1.3, Application Note 1. In addition, this discretion must have been entrusted to the defendant by the victim. *See Broderson,* 67 F.3d at 456; *Jolly,* 102 F.3d at 48.

Hirsch relies primarily on *Jolly,* in which we reversed an enhancement for abuse of trust where the defendant had been convicted of mail fraud for operating a Ponzi scheme. Jolly was president of a company formed to sell computer hardware and software. He initially raised $500,000 in loans from investors and later raised an additional $310,000. He sent false statements to investors showing sales, profits, and other company figures. But the company existed only on paper; it had no employees or sales. The money Jolly raised was used to pay interest to early investors and to pay for Jolly's personal expenses. *See id.* at 47–48. We rejected an abuse-of-trust enhancement, however, because Jolly did not hold a position of trust vis-à-vis the investors. *See id.* at 48. Jolly was not a fiduciary; rather, he and the investors had an armslength contractual relationship. *See id.; see also United States v. Mullens,* 65 F.3d 1560, 1566–67 (11th Cir .1995) (rejecting enhancement for abuse of trust where defendant operated Ponzi scheme but did not hold himself out as an investment broker and did not have a "special, close, or personal attachment, or fiduciary relationship, with any" of the investors). "Jolly held himself out as the president of a company seeking capital, not as an investment advisor." *Jolly,* 102 F.3d at 50.

The relationship between Hirsch and his victims, however, was different. Hirsch concedes that there was a "fiduciary relationship between [him] and his investors" and that he was "an investment advisor who acted on behalf of hundreds of investors … [and was] in a position of trust at all times." Appellant's Br. at 21, 23. The importance of this distinction is that "unlike borrowers, investment advisors and brokers are entrusted with discretion by their clients." *Jolly,* 102 F.3d at 50. Hirsch also concedes, with respect to the CD investment scheme, that he "was given some investment discretion." Appellant's Br. at 24.

In addition, the district court found that Hirsch developed "personal relationships with his clients wherein they relied on and trusted him." This fact further distinguishes *Jolly*, in which we emphasized that the record did not "disclose any relationship with particular investors in which Jolly occupied a position of influence beyond that enjoyed by garden-variety borrowers." *Jolly*, 102 F.3d at 49. Because Hirsch was a broker and investment advisor entrusted with investment discretion by his investors and because he had a fiduciary and personal relationship (rather than an arms-length relationship) with his investors, he held a position of trust. *See United States v. Moskowitz*, 215 F.3d 265, 272 (2d Cir.2000) (distinguishing *Jolly* and affirming imposition of enhancement for abuse of trust where defendant executive fraudulently inflated corporation's stock prices, breaching fiduciary duty to shareholders); *United States v. Queen*, 4 F.3d 925, 929 (10th Cir.1993) ("An investment advisor/broker is ... entrusted with the discretionary authority to manage the assets of his or her clients.... Such a person is well positioned to commit a difficult-to-detect wrong."); *United States v. Paneras*, 222 F.3d 406, 412–13 (7th Cir.2000) (defendant who represented himself as a licensed broker abused a position of trust when he misappropriated victim's funds).

*B. Whether Hirsch Used His Position of Trust to Facilitate His Crime*

■ Hirsch argues that even if he held a position of trust, "he never used his position in any *significant* manner to either commit or conceal the offenses for which he was convicted." Appellant's Br. at 26 (emphasis in original). With respect to the CD investments, Hirsch concedes that he had some discretion, but argues that the fraud consisted of misreporting the health and status of the investment rather than investing in financial instruments beyond the scope of his discretion. But Hirsch did disburse some of the funds that he received beyond the scope of his discretion: Some of the money was used to support the Ponzi scheme by paying interest to other investors. In addition, Hirsch admitted at his plea allocution that he represented to investors that the CD investments would be safe, but in fact, "some funds which were purportedly invested in safe investments were not placed in safe investments." Hirsch similarly violated the trust granted to him with respect to the mortgage units by failing to pay investors the principal that had been repaid by mortgagors. Finally, as the district court emphasized, Hirsch used the investors' trust in him to discourage them from demanding their money. Hirsch's abuse of trust thus significantly facilitated his crime. The district court's finding on this issue was therefore not clearly erroneous.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.