[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 18, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-12818
Non-Argument Calendar

_____

D. C. Docket No. 07-60187-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARLENE DINNALL,
a.k.a. Marlene Morris,
a.k.a. Marlene Henry, etc.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 18, 2009)**

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Marlene Dinnall appeals her sentence of 51 months of imprisonment for fifteen convictions for her creation of fraudulent documents and the transmission, use, and intended use of those documents to obtain loans for borrowers from mortgage lenders and banks. Dinnall challenges the calculation of the amount of loss, enhancement of her sentence for the use of a sophisticated means and the abuse of a position of trust, and the refusal of the district court to grant her a downward departure. We affirm in part, reverse in part, and remand for resentencing.

## I. BACKGROUND

Dinnall owned a tax and accounting firm and worked as a loan originator for Stockton, Turner & Morris, a mortgage broker. As a loan originator, Dinnall completed loan applications for borrowers, submitted the documents to lenders, and underwriters for the lenders then reviewed the information. If a lender approved the loan, it provided a check at closing that was payable to Dinnall and Stockton, Turner for loan origination fees, mortgage brokerage fees, and yield spread premiums.

Between July 2001 and August 2003, Dinnall created and submitted to mortgage lenders fraudulent employment and earnings statements in eleven loan applications for borrowers. The false documents included residential loan

applications, forms to verify employment, W-2 statements, payroll stubs, bank account statements, and other information required by lenders to review the creditworthiness of the borrowers. Dinnall listed the phone numbers of friends and relatives on the employment records and recruited those individuals to verify the false information if contacted by an underwriter. After Dinnall completed the loan application, she sent the documents to the lender, whose underwriters reviewed the information. In at least three of eleven loans that she originated, Dinnall used straw buyers to conceal the poor credit rating or lack of income of the borrowers. One of the loans that Dinnall originated using the false name Donald Lampley led to a foreclosure and caused the lender, National City Mortgage, to lose $17,384.50.

Agent Cynthia Severinsen of the Federal Bureau of Investigation investigated Dinnall's conduct. The agent sent Christopher Wilson, who had obtained false documents from Dinnall in the past but had since agreed to serve as a cooperating witness, to ask Dinnall for help in obtaining a loan. Wilson asked Dinnall to create documents that Wilson could use both to obtain a line of credit of $800,000 from Washington Mutual Bank and to apply for home mortgage loans. Dinnall agreed to produce the documents, but refused to originate the loans because "she knew it was bad business." In August 2002, Dinnall gave Wilson false tax returns and financial statements for Wilson's fictitious company, and a

3

Social Security number, W-2 forms, and pay stubs. A week later, Dinnall introduced Wilson to an individual who gave Wilson fraudulent Social Security cards, work permits, and a green card. Wilson did not apply for or obtain any loans using the fraudulent documents.

In August 2007, Dinnall was charged in a fifteen-count indictment for conspiracy to transfer, possess, and use a means of identification of another, and to commit mail and wire fraud, 18 U.S.C. § 371, mail fraud, id. § 1341, wire fraud, id. § 1343, fraudulent use of identification, id. § 1028(a)(7), attempted bank fraud, id. § 1349, causing the sale of a fraudulent Social Security card, 42 U.S.C. § 408(a)(7)(C), and the transfer of false documents, 18 U.S.C. § 1028(a)(2). On the morning of trial, Dinnall pleaded guilty to all charges.

The presentence investigation report listed Dinnall's base offense level at six, United States Sentencing Guidelines § 2B1.1(a) (Nov. 2002), and increased it by fourteen levels based on a loss between $400,000 and one million dollars, id. § 2B1.1(b)(1)(H); by two levels for use of sophisticated means, id. § 2B1.1(b)(9)(C); and by two levels for obtaining and using Social Security numbers without authorization from the taxpayers to use their numbers or to obtain mortgages in their names, id. § 2B1.1(b)(10)(C)(i). The report also listed a two level enhancement for abusing a position of trust. Id. § 3B1.3. Based on a total offense

level of 26 and a criminal history of I, the report listed a guideline range between 63 and 78 months of imprisonment. The report also recommended an upward departure because the offense level substantially understated the seriousness of Dinnall's conduct. Id. 2B1.1 cmt. n.19(A).

Dinnall objected to the presentence report on five grounds. First, Dinnall challenged the enhancement for an intended loss of $800,000 on the basis that Wilson fabricated that amount and he would not have received a loan in that amount because the documents Dinnall created "were insufficient to obtain any loan or equity line." Second, Dinnall challenged the enhancement for a sophisticated means on the basis that her methods were not complicated and the enhancement resulted in double counting when combined with the increase for an abuse of a position of trust. Third, Dinnall challenged the enhancement for abuse of trust on the basis that underwriters for the lenders reviewed the documents she prepared and "there was no violation of a public or private trust in her actions." Fourth, Dinnall argued that she was entitled to a reduction for her acceptance of responsibility. Fifth, Dinnall requested a downward departure or variance based on the small loss of the victims and her relative culpability. Dinnall submitted with her objection a statement in which she accepted responsibility for her crimes.

At the sentencing hearing, Lynn Rowland, a senior vice president of

5

National City Mortgage, said that the company funded five loans in which Dinnall supplied false information. Rowland explained that National Mortgage required its brokers to provide accurate information and its underwriters examined loan documents for error and obvious fraud. When questioned by the court, Rowland testified that the loan originator or broker had a fiduciary relationship with National City. On cross-examination, Rowland stated that he had misunderstood the question by the court and that National Mortgage had a fiduciary relationship with the broker, Stockton, Turner and that "the loan originators that work for Stockton, Turner are agents of Stockton, Turner."

At the conclusion of the evidence, Dinnall repeated her challenges to the enhancements. With respect to the abuse of trust enhancement, the government argued that Dinnall was an agent of Stockton, Turner, the broker "relied on [Dinnall] to operate in a forthright and non-fraudulent manner," and Dinnall occupied a position of trust with the lenders because of their "heavy reliance" on her and her direct contact with them. The court found that Dinnall abused a position of trust because she "provided fraudulent documents to the mortgage lenders which she knew . . . [they] would rely upon in determining whether or not to loan money to the mortgagors . . . ."

The district court increased Dinnall's base offense level with enhancements

6

for the amount of loss, U.S.S.G. § 2B1.1(b)(1)(H), use of sophisticated means, id. § 2B1.1(b)(9)(C), unauthorized use of Social Security numbers, id. § 2B1.1(b)(10)(C)(i), and abuse of a position of trust, id. § 3B1.3.  The court reduced the offense level by two points because Dinnall had accepted responsibility for her crimes.  U.S.S.G. § 3E1.1(a).  With an adjusted offense level of 24 and a criminal history of I, the district court calculated Dinnall's guideline range between 51 and 63 months of imprisonment.  The district court "considered the statements of all the parties[,] [t]he presentence report . . ., as well as [the] statutory factors[,]" and sentenced Dinnall to fifteen concurrent terms of 51 months of imprisonment.  The court found "there [was] absolutely no reason . . . to depart from the sentencing guideline range" based on the facts of the case and the sentences given to equally culpable defendants.  Dinnall objected to her sentence, but did not state any grounds to support the objection.

## II. STANDARD OF REVIEW

We review de novo the calculation of a sentence under the Sentencing Guidelines.  United States v. DeVegter, 439 F.3d 1299, 1303 (11th Cir. 2006).  We also review de novo the application of enhancements to a sentence and review findings of fact related to those enhancement for clear error.  United States v. Woodard, 459 F.3d 1078, 1087 (11th Cir. 2006) (amount of loss); United States v.

7

Humber, 255 F.3d 1308, 1311 (11th Cir. 2001) (sophisticated means); United States v. Ward, 222 F.3d 909, 911 (11th Cir. 2000) (abuse of a position of trust).

### III. DISCUSSION

Dinnall challenges the calculation of her sentence on four grounds. Dinnall argues that the district court erred in the calculation of her loss amount, the application of enhancements for use of a sophisticated means and the abuse of a position of trust, and the denial of a downward departure. We address each argument in turn.

*A. The District Court Correctly Calculated the Loss Amount.*

Dinnall argues that the district court erred when it determined the amount of loss. Dinnall argues that the district court should have used the amount of actual loss because Wilson selected the amount of $800,000 and could not have obtained such a large loan with the fraudulent documents. This argument fails.

The district court did not err by using the intended loss rather than the actual loss for its calculation. The intended loss was the greater of the two figures. See U.S.S.G. § 2B1.1 cmt. n.2(A). Although National City Mortgage suffered a loss of $8,123.15 minus interest, Dinnall created fraudulent documents that she represented to Wilson would allow him to obtain a loan of $800,000. Even if it was "impossible" for Wilson to obtain the loan because of inaccurate or inadequate

8

information in the documents or "unlikely" that Wilson would request a loan because of the government sting operation, Dinnall was responsible for the amount that she believed Wilson intended to borrow. See id. § 2B1.1(b)(1)(H); id. § 2B1.1 cmt. n.2(A)(ii).

### B. The District Court Did Not Clearly Err By Applying the Sophisticated Means Enhancement.

Dinnall argues that the district court erred by applying a two level enhancement for use of a sophisticated means, but this argument also fails. Dinnall misused knowledge that she had acquired as an accountant and loan originator to misuse Social Security numbers and create documents that misrepresented the financial status of borrowers using a method that convinced multiple underwriters to approve loans to otherwise ineligible persons. See U.S.S.G. § 2B1.1 cmt. n.8(B) (sophisticated means includes activities that are "especially complex or especially intricate" that "pertain to the execution or concealment of an offense"). Dinnall recruited friends and family to assist in her fraud and used a contact to provide Wilson with fraudulent government documents. Dinnall's activities remained undetected for two years and resulted in at least eleven fraudulent loans. See Humber, 255 F.3d at 1313–14. The district court was entitled to find that Dinnall used a sophisticated means to accomplish her fraudulent activities.

9

*C. The District Court Erred By Applying The Abuse of Trust Enhancement.*

Dinnall argues that she did not occupy a position of trust with the victims. The government contends that Dinnall held a position of trust with the lenders and argues that she abused that trust by submitting documents of such caliber that it was "virtually impossible" for the lender to detect the false information. We agree with Dinnall.

A sentencing court must determine, before it applies an abuse of trust enhancement, whether the defendant occupied a position of trust relative to the victim. The enhancement "'applies only where the defendant has abused discretionary authority entrusted to the defendant by the victim . . . .'" United States v. Garrison, 133 F.3d 831, 839 (11th Cir. 1998) (quoting United States v. Jolly, 102 F.3d 46, 48 (2d Cir. 1996)) (emphasis omitted). A position of trust must involve more than a contractual or arm's length commercial relationship. See United States v. Williams, 527 F.3d 1235, 1250 (11th Cir. 2008) (discussing Garrison and United States v. Mills, 138 F.3d 928 (11th Cir. 1998)).

The district court erred by applying the enhancement for abuse of trust. Dinnall did not occupy a position of trust with the victim, National City Mortgage, or any other lender. Although she communicated directly with the lenders, Dinnall acted on behalf of and in her role as a loan originator for Stockton, Turner. There

10

is no evidence that lenders reposed any trust in Dinnall. As stated by Lynn Rowland at the sentencing hearing, National City Mortgage executed a contract and had a fiduciary relationship with Stockton, Turner. Dinnall held a position of trust with Stockton, Turner to convey accurate information on its behalf to lenders, but she was not convicted of crimes against her employer. See United States v. Barakat, 130 F.3d 1448, 1455 (11th Cir. 1997) (there is a "required connection . . . between the abuse of the position of trust and the offense of conviction"). We reverse and remand for the district court to recalculate Dinnall's advisory guideline sentence without the abuse of trust enhancement.

*D. We Lack Jurisdiction to Review the Decision to Deny Dinnall a Downward Departure.*

Dinnall argues that the district court wrongly refused to grant her a downward departure, but we lack jurisdiction to review the merits of her argument. We cannot review the discretionary refusal of a district court to grant a downward departure unless the district court erroneously believed that it was without authority to depart from the advisory guidelines range. United States v. Dudley, 463 F.3d 1221, 1228 (11th Cir. 2006). The district court understood its authority to depart downward, but declined to exercise that authority. We are without jurisdiction to review that decision.

11

## IV. CONCLUSION

Dinnall's sentence is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.