**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4471

UNITED STATES OF AMERICA,

          Plaintiff – Appellee,

     v.

XAVIER MILTON EARQUHART, a/k/a Xavier Smart, a/k/a Xavier Akpan Smart, a/k/a Xzavier Erquhart, a/k/a Xzayvier Ernhart, a/k/a David Imrich, a/k/a Kevin Liols, a/k/a Michael Powell, a/k/a Melvin Hailstones, a/k/a Rety Humos, a/k/a Milton Monn,

          Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, Senior District Judge. (5:17-cr-00134-BR-1)

Argued: October 31, 2019                Decided: December 2, 2019

Before MOTZ, DIAZ, and THACKER, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Richard Croutharmel, RICHARD CROUTHARMEL, ATTORNEY AT LAW, Raleigh, North Carolina, for Appellant. Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Xavier Milton Earquhart of bank fraud, engaging in monetary transactions involving criminally derived property, and aggravated identity theft. The district court sentenced him to a 384-month term of imprisonment. Earquhart appeals, challenging the district court's application of a two-level sentencing enhancement for deriving more than $1,000,000 in gross receipts from one or more financial institutions. Earquhart also contends that his exclusion from the courtroom during sentencing violated his due process rights and Federal Rule of Criminal Procedure 43(a). For the reasons set forth herein, we vacate Earquhart's sentence and remand the case for resentencing.

I.

This case arises from two bank fraud schemes. In the first scheme, Earquhart obtained $184,987 in bank loans using fraudulently obtained property as collateral. In the second, Earquhart purchased eight properties that had been foreclosed on by homeowners' associations (HOAs) for nonpayment of HOA fees. These properties were subject to the first priority liens of various financial institutions. Earquhart filed fraudulent Satisfaction of Security Instruments (SOSIs) with the local register of deeds, making it appear as though the properties were free and clear of encumbrances. He then sold the properties to unaware third-party purchasers, pocketing sales proceeds of $1,304,804.71. The Government charged Earquhart with multiple counts of bank fraud, engaging in monetary transactions involving criminally derived property, and aggravated identity theft offenses. The jury convicted him of all charges.

3

At sentencing, after calculating the Guidelines range and considering a victim impact statement, the district court offered Earquhart an opportunity to speak on his own behalf. When Earqhuart began to discuss several *pro se* motions he had filed challenging the court's subject matter jurisdiction, the court explained that these motions had been denied and that this was an opportunity to speak in mitigation. Earquhart did not do so. Instead he continued to assert his subject matter jurisdiction challenge. The district court responded that it had repeatedly rejected Earquhart's jurisdictional contentions and did not want to hear further argument on them. After Earquhart continued to argue jurisdiction, the court ordered him to be seated and be quiet, and when Earquhart failed to comply, the court ordered that he be removed from the courtroom to a cell equipped with videoconferencing equipment. When Earquhart began to argue jurisdiction from the cell, the court ordered that his microphone be muted, while the sentencing hearing proceeded.

With one exception not relevant here, the district court adopted the presentence report's ("PSR") recommendations over the defense's objection. The PSR recommended imposing a two-level sentencing enhancement on Earquhart "for deriv[ing] more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense." U.S.S.G. § 2B1.1(b)(16)(A) (2016) (the "Gross Receipts Enhancement" or the "Enhancement"). The PSR calculated that Earquhart had obtained $1,489,791.71 in gross receipts, comprised of $184,987 in proceeds from the bank loans and $1,304,804.71 in proceeds from the home sales.

Earquhart appeals, challenging the district court's application of the Enhancement and its exclusion of him from the courtroom.

4

II.

"In assessing whether a district court properly calculated the Guidelines range, including its application of any sentencing enhancements, we review the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Fluker*, 891 F.3d 541, 547 (4th Cir. 2018) (alterations omitted).

The Gross Receipts Enhancement provides for a two-level enhancement when a defendant "derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense." § 2B1.1(b)(16)(A). The district court adopted the PSR's recommendation to impose the Enhancement based on $1,489,791.71 in gross receipts — $184,987 "in loan proceeds from three financial institutions" and $1,304.804.71 "in proceeds by selling fraudulently obtained homes." The court erred in treating the $1,304.804.71 in proceeds from the home sales as receipts "derived" from a financial institution. Although financial institutions held liens against the homes, the proceeds from the home sales came not from the lienholders, but from *third-party purchasers* — four individual purchasers and four entities.[1]

The Government argues that by filing the fraudulent SOSIs — which made it appear as though the properties were free and clear of encumbrances — Earquhart "stole

---

[1] We note that even assuming that all four entities were financial institutions for purposes of the Enhancement (the Government does not so contend), Earquhart's total gross receipts would not exceed $1,000,000, as required by the guideline.

collateral" that was "owned by or under the custody and control of financial institutions."[2]

Brief for United States at 20. Earquhart then "successfully acquired $1,304,804.71 in proceeds by selling" the homes to the third-party purchasers. *Id.* These facts, the Government maintains, suffice to trigger the Enhancement.

This argument fails because the Gross Receipts Enhancement only applies when a financial institution *provides* or is the *source of* the gross receipts. To construe the Enhancement otherwise ignores its plain language: for the guideline provides that gross receipts must be "derived . . . from one or more financial institutions." § 2B1.1(B)(16)(A). To "derive" means to "receive[] from [a] specified source," BLACK'S LAW DICTIONARY 444 (6th ed. 1990), or "to take or receive esp[ecially] from a source," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 608 (1993).

As our sister circuits have recognized, given the ordinary meaning of the word "derive," it is not enough to show that a financial institution was used or exploited in obtaining the gross receipts; the plain text of the guideline "directs us to determine the *source* of the funds." *See United States v. Stinson*, 734 F.3d 180, 186 (3d Cir. 2013); *see*

---

[2] This is a questionable characterization. According to the testimony of one lienholder's representative, although Earquhart's conduct created a "cloud on title," the lienholder still held a security interest in the subject property and could collect monthly payments or initiate foreclosure. The mortgagor of the same property similarly testified that he had not been excused from his obligations under the mortgage and had never stopped making monthly payments. An officer of another entity — listed in the PSR as one of the affected lienholders — testified that his company had sold its interest in the property years before Earquhart's offense. This entity, by definition, could not have had collateral "stolen" from it as a result of the fraud. To be sure, the SOSIs *purported* to terminate certain liens, and some of the lienholders may incur costs in clearing any cloud on title. But, as explained below, such costs are not proceeds "derived . . . from one or more financial institutions." § 2B1.1(b)(16)(A).

*also United States v. Van Alstyne*, 584 F.3d 803, 819 (9th Cir. 2009) ("Under this language, the only effect on a financial institution that counts is money flowing from a financial institution into the defendant's coffers."); *United States v. Huggins*, 844 F.3d 118, 122–24 (2d Cir. 2016) (enhancement applies only where a "financial institution suffers some type of loss or liability in *providing* the requisite funds" (emphasis added)).

The Government's contrary view accords with the pre-2001 version of the Enhancement, which provided for a four-level enhancement when an offense "*affected* a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense." U.S.S.G. § 2B1.1(b)(6)(B) (2000) (emphasis added). But the 2001 amendment "changed the plain language of the guideline. . . . In the newer version, the gross receipts are to be derived from the financial institution." *United States v. Hartz*, 296 F.3d 595, 599 (7th Cir. 2002); *accord Van Alstyne*, 584 F.3d at 819 ("The plain language of the earlier version unambiguously conveyed that it applied if the offense generated more than $1 million from any source and also affected a financial institution; under this language any impact on a financial institution would do. The amended language makes equally clear that the enhancement only applies if gross receipts in excess of $1 million are derived from a financial institution." (citation omitted)).

In support of its argument, the Government relies on an application note to the guideline defining "gross receipts from the offense" to include "all property, real or personal, tangible or intangible, which is obtained directly or indirectly as a result of such offense." § 2B1.1 cmt. n. 12(B) (2016). The force of this note is unclear. The phrase "gross receipts from the offense" was removed from the guideline itself in 2001,

7

"substantively chang[ing] the requirements for applying the guideline by focusing on the amount derived from the financial institutions rather than the amount derived from the offense as a whole." *Hartz*, 296 F.3d at 599. Moreover, even if gross receipts continue to be those that may be "obtained . . . indirectly as a result of [the] offense," this does not eliminate the requirement in the amended guideline itself that such receipts also be "derive[d] . . . from one or more financial institutions." We note that the Sentencing Commission has referred to the Gross Receipts Enhancement as an enhancement for "personally receiving more than $1,000,000 from a financial institution," *see* U.S. SENTENCING COMM'N, AMENDMENTS TO THE SENTENCING GUIDELINES 60 (2001) — a clear indication that the Commission intends the Enhancement to mean what it says, i.e., to apply only where a financial institution is the *source* of the funds.

In sum, because Earquhart did not "derive[] more than $1,000,000 in gross receipts from one or more financial institutions," § 2B1.1(b)(16)(A), the district court's imposition of the Gross Receipts Enhancement constitutes procedural error. Accordingly, we must vacate Earquhart's sentence and remand for resentencing.

III.

Earquhart also contends that the district court erred in removing him from the sentencing hearing without a clear warning. Criminal defendants have a due process right "to be present at all stages of the trial where [their] absence might frustrate the fairness of the proceedings." *See United States v. Camacho*, 955 F.2d 950, 952–53 (4th Cir. 1992). Federal Rule of Criminal Procedure 43(a) provides that a defendant "must be present at

8

. . . sentencing." Fed. R. Crim. P. 43(a)(3). The right to be present can be waived if "the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom." Fed. R. Crim. P. 43(c)(1)(C); *Illinois v. Allen*, 397 U.S. 337, 346 (1970)).

The Government argues that the district court's admonitions to Earquhart satisfied the warning requirement and, in the alternative, that any Rule 43 error was harmless. We need not address these arguments given that we must vacate Earquhart's sentence and remand for resentencing because of the guidelines error in applying the Gross Receipts Enhancement.

Nevertheless, in doing so, we remind sentencing judges that the "[w]arning is an integral part of [Rule 43], as well as to the constitutional underpinning of the rule itself." *United States v. Lawrence*, 248 F.3d 300, 305 (4th Cir. 2001). This is no less true at sentencing, where physical presence affords defendants "one last chance to personally plead [their] case." *See id.* at 304.

## IV.

For the foregoing reasons, the judgment of the district court is

*VACATED AND REMANDED FOR RESENTENCING.*